UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK WRIGHT

       Petitioner,

v.                             Case No. 01-74112

JIMMY STEGALL,                 Honorable Patrick J. Duggan

       Respondent.
_____/


## OPINION AND ORDER DENYING PETITIONER'S REQUEST FOR HABEAS RELIEF PURSUANT TO 28 U.S.C. § 2254 AND DENYING PETITIONER'S MOTION FOR LEAVE TO PERMIT DISCOVERY

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on September 30, 2005.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

In October 2001, Petitioner Frederick Wright ("Petitioner") filed the pending pro

se Petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. On May 7, 2002,

Respondent filed an Answer to the Petition contending that it was untimely pursuant to

the applicable one-year statute of limitations. This Court agreed and dismissed the

Petition on August 16, 2002. A Judgment dismissing the Petition was entered on August

23, 2002.

On November 9, 2004, the United States Court of Appeal for the Sixth Circuit,

1

concluding that the Petition was timely filed, vacated this Court's Judgment and remanded the case to this Court for further proceedings. This Court then issued an Order directing Respondent to file a supplemental answer responding to the merits of the petition. Respondent filed a Supplemental Answer on March 1, 2005, and filed the transcript from Petitioner's state court trial on September 9, 2005. In the interim, Petitioner filed a motion for leave to permit discovery on August 16, 2005. Having considered the Petition and the Supplemental Answer and Petitioner's motion for discovery, and for the reasons set forth below, the Court now concludes that Petitioner's request for habeas relief and request for discovery must be denied.

## Background

On August 6, 1986, at approximately 12:50 a.m., a black male entered a Zephyr gas station in Fruitport, Michigan, and asked the attendant, Ronald Allen Kendra ("Kendra"), and a customer, David Paul Boone ("Boone"), about a tow service for his broken down vehicle. After Kendra or Boone gave the man the name of a towing company, the man went to use a pay phone in the station parking lot. Boone subsequently went out to his car, which was parked at one of the station's pumps, and left the station. The man then re-entered the station, asked Kendra for the name of the street on which the station was located, and returned to the pay phone. As Kendra was about to place cash in the station's drop-safe, the man re-entered the station with a gun drawn and demanded money. After Kendra gave the man the money he was holding and cash from another register, the man instructed Kendra to lie down on the floor with his hands over his head.

2

After the man left, Kendra called the police.

Detective/Sergeant James Albright ("Detective Albright") and Detective/Sergeant Richard Griffith ("Detective Griffith") of the Michigan State Police investigated the armed robbery. Kendra described the perpetrator as a black male, 6' to 6'2" in height, with short hair, a mustache, and a small build, wearing a dark brown shirt and brown pants. (Trial Tr. at 86). Boone described the perpetrator as a black male, 25-26 years of age, medium brown skin, 6' to 6'2" in height, 200 pounds, with a 2-3 inch afro hairstyle, no facial hear, wearing a brown shirt and tan pants. (Trial Tr. at 120 & 126-27). Neither Kendra nor Boone recalled any scars or injury marks on the perpetrator. (Trial Tr. at 108-09 & 127).

The day following the robbery, Detective Griffith showed Kendra 18 photographs, none of which were of Petitioner. (Trial Tr. at 156). Kendra did not identify anyone in this photo array as the perpetrator. (*Id*.) On the same day, Detective Wright showed Boone two "mug books," neither of which contained a picture of Petitioner. (Trial Tr. at 146-47). Boone did not identify anyone in the mug books as the perpetrator of the robbery, although he stated that one individual pictured looked "similar" to the perpetrator. (Trial Tr. at 153). The officers did not recover any evidence at the scene.

Approximately two months after the Zephyr robbery, "Ray's Mini Mart" in Muskegon, Michigan, was robbed. An eyewitness informed the Muskegon County Sheriff's Department that immediately after the robbery, he saw a black male, approximately 6' tall, leave the store and drive away in a white Lincoln. The Sheriff's

2:01-cv-74112-PJD    Doc # 61    Filed 09/30/05    Pg 4 of 28    Pg ID 184

Department subsequently traced the automobile to Petitioner and arrested him. Petitioner subsequently was charged with committing the Ray's Mini Mart robbery.

Meanwhile, the Muskegon County Sheriff's Department contacted Detective Albright indicating that they had arrested a possible suspect in the Zephyr robbery. (Trial Tr. at 147). Detective Albright then had Kendra observe two line-ups, consisting of five individuals.[1] (Trial Tr. at 103, 147 & 149) Petitioner was in the second line-up and Kendra identified him as the perpetrator of the Zephyr robbery. (Trial Tr. at 103-04).

Petitioner subsequently informed his attorney in the Ray's Mini Mart case that he had loaned his car to a man named Larry Boyles ("Boyles") at the time and date of that robbery. After the police arrested Boyles, he confessed to the Ray's Mini Mart robbery and the charges against Petitioner were dismissed. Boyles told the police, however, that Petitioner had committed the Zephyr robbery. Petitioner thereafter was arrested and charged with armed robbery in connection with that offense, as well as being a third felony offender.

In January 1987, Petitioner was tried in two separate jury trials in the Circuit Court for the County of Muskegon, State of Michigan, on the armed robbery and third felony offender charges. At his trial on the armed robbery charge, Kendra identified Petitioner as the perpetrator of the Zephyr robbery. (Trial Tr. at 86). Kendra testified that he observed the perpetrator of the robbery for about a minute and a half the first time he

---

[1]Although notified of the line-up, Boone was not able to appear due to work. (Trial Tr. at 124)

4

entered the store (Trial Tr. at 87), for about five to ten seconds the second time (*Id*. at 88),

and for about two to three minutes during the actual robbery.  (Trial Tr. at 91).  When

Boone testified, he was not able to positively identify Petitioner, although he believed

Petitioner looked similar to the perpetrator of the robbery.  (Trial Tr. at 121).  In his

defense, Petitioner presented five witnesses who claimed Petitioner was traveling

between Ypsilanti and Detroit, Michigan on the date and time of the robbery and that he

had a noticeable black eye on that date.  After deliberating for over nine hours, the jury

found Petitioner guilty of armed robbery.  A separate jury subsequently found Petitioner

guilty of being a third felony offender.

On February 4, 1987, the Honorable R. Max Daniels sentenced Petitioner to prison

for 30-60 years.  Petitioner's conviction and sentence were thereafter affirmed by the

Michigan Court of Appeals.  *See People v. Frederick Lee Wright*, No. 101879 (Mich. Ct.

App. October 9, 1989).  The Michigan Supreme Court denied Petitioner's leave to appeal.

*See People v. Frederick Lee Wright*, No. 87717 (Mich. July 31, 1990).

On August 31, 1992, Petitioner filed his first motion for relief from judgment in

the trial court pursuant to Michigan Court Rule 6.500.  The court denied Petitioner's

motion on December 2, 1992.  Petitioner's appeal to the Michigan Court of Appeals was

denied on June 8, 1993.  *See People v. Wright*, No. 160538 (Mich. Ct. App. June 8,

1993).  The Michigan Supreme Court subsequently denied Petitioner's delayed

application for leave to appeal.  *See People v. Frederick Lee Wright*, No. 97104 (Mich.

December 28, 1993).

On January 10, 1997, Petitioner filed a second motion for relief from judgment in the trial court, *pro se*. Petitioner filed pro se motions to supplement his claims on March 11, 1997 and April 24, 1997. On July 18, 1997, after retaining counsel, Petitioner filed another supplement to his motion. In both his April 24 and July 18 supplements, Petitioner asserted his innocence based on newly discovered evidence.

Specifically, Petitioner contended that two other individuals, Boyles and Elson Earl Gee ("Gee"), committed the Zephyr robbery. In support of his actual innocence claim, Petitioner submitted an affidavit from Gee in which Gee claimed that he and Boyles committed the robbery. According to Gee, Boyles told Gee that he told the police Petitioner committed the armed robbery in retaliation for Petitioner's identification of Boyles as the perpetrator of the Ray's Mini Mart robbery. Petitioner submitted a second affidavit from an individual named Frank Grays stating that Boyles admitted to him that Boyles committed the Zephyr robbery and expressed regret that Petitioner had been convicted for the offense.

On March 3, 2000, Muskegon County Circuit Court Judge Timothy G. Hicks denied Petitioner's motion. *See* Petition Ex. U. Judge Hicks found that some of the information contained in Gee's affidavit was not "newly discovered" and that the information in both affidavits was cumulative in the respect that it supported the alibi Petitioner asserted at trial. *See id*. Judge Hicks furthered questioned the affiants' reliability in light of their prior criminal histories. *See id*. The court noted, however, that it would be willing to revisit Petitioner's claim "if, but only if, Boyles's testimony,

6

through excerpts from a deposition properly noticed, is presented, or accompanied by

tangible physical evidence . . ." *See id*. Petitioner then filed delayed applications for

leave to appeal which the Michigan Court of Appeals and Michigan Supreme Court

denied. *See People v. Frederick Lee Wright*, No. 227104 (Mich. Ct. App. January 12,

2001); *People v. Frederick Lee Wright*, No. 118679 (Mich. July 30, 2001).

Petitioner then filed the pending federal habeas Petition. Petitioner raises the

following ten grounds in support of his Petition:

> I.   Petitioner was denied Due Process as guaranteed by the Michigan and Federal Constitutions when the trial court allowed the prosecutor to impeach him with traffic tickets that never resulted in conviction.
>
> II.  Petitioner was denied Due Process as guaranteed by the Michigan and Federal Constitutions when he was convicted based on insufficient evidence.
>
> III. Petitioner was denied Due Process as guaranteed by the Michigan and Federal Constitutions when impermissible pretrial and in-court identifications were not suppressed.
>
> IV.  Petitioner was denied Due Process as guaranteed by the Michigan and Federal Constitutions due to the trial court's incomplete and improper jury instruction on identification.
>
> V.   Petitioner was denied Due Process as guaranteed by the Michigan and Federal Constitutions when the prosecutor bolstered and vouched for the credibility of the prosecutions' main witness.
>
> VI.  Petitioner was denied Due Process as guaranteed by the Michigan and Federal Constitutions when the trial court failed to articulate or specify on the record

7

whether the sentence imposed applied to one or both of
his convictions.

VII.    Petitioner was denied his rights to a fair trial and in
impartial jury due to the trial court's coercive
instructions that foreclosed the possibility of a "no
verdict" outcome.

VIII.   Petitioner was denied his Sixth Amendment right to
effective assistance of trial counsel.

IX.     Petitioner was denied his Fourteenth Amendment right
to effective assistance of appellate counsel.

X.      Petitioner is entitled to relief where newly discovered
evidence proves his innocence.

## Standards of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), Petitioner is entitled

to a writ of habeas corpus only if he can show that the state court's adjudication of his

claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under Section 2254(d), Petitioner must show that the

state court's decision "was either contrary to, or an unreasonable application of, [the

Supreme] Court's clearly established precedents, or was based upon an unreasonable

determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-

8

53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. at 1523. A state court's findings of fact are presumed to be correct unless the petitioner can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With respect to Petitioner's claims of ineffective assistance of counsel, courts apply a two-part test to evaluate such claims:

> First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The Sixth Circuit has instructed that in assessing counsel's performance, courts must consider "whether 'counsel's representation fell below an objective standard of reasonableness,' as measured by 'prevailing professional norms.'" *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997)(quoting *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064-65)). "To establish

9

prejudice, a defendant must demonstrate a reasonable probability that 'but for counsel's

unprofessional errors, the result of the proceeding would have been different.'"  *Id*. at

1155 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068)).

## Applicable Law and Analysis

**I.**     **Whether Petitioner's due process rights were violated when the trial court allowed the prosecutor to impeach him with traffic tickets that never resulted in a conviction**

Petitioner contends that his due process rights were violated when the trial court

allowed the prosecutor to attack his credibility with traffic tickets in violation of Rule

609(a) of the Michigan Rules of Evidence.  The Michigan Court of Appeals rejected

Petitioner's claim concluding as follows:

> Defendant in his own testimony brought up the matter of
> pending traffic tickets in order to explain certain photographs
> of himself used to attack prosecution testimony identifying
> defendant as the perpetrator of the charged crime.  During
> cross-examination, the prosecutor further developed this
> matter, which was already injected into trial by defendant,
> thereby testing defendant's recollection of the matter.  We
> find that defendant was not prejudiced by an attempt to
> impeach him for minor traffic infractions.

*See People v. Frederick Lee Wright*, No. 101879 at 2 (Mich. Ct. App. October 9, 1989).

This Court cannot provide habeas relief even if Petitioner is correct that this

evidence was admitted in violation of Michigan law.  It is well-established that "'federal

habeas corpus review does not lie for errors of state law.'"  *Estelle v. McGuire*, 502 U.S.

62, 67, 112 S. Ct. 475, 480 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct.

3092, 3102 (1990)).  As the *Estelle* Court stated: ". . . it is not the province of a federal

10

habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 67-68, 112 S. Ct. at 480.  As the Sixth Circuit has held: "'[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.'"  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)(quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)).

An evidentiary ruling may be so egregious that it results in a denial of fundamental fairness in violation of due process and thus warrants habeas relief.  *Id.* (citations omitted).  As the Sixth Circuit has stated, however, this category of infractions has been defined "very narrowly" and "'[g]enerally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Id.* (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).  Petitioner fails to show that the trial court's admission of his traffic tickets for the purpose of impeachment fall within this narrow category of infractions.

## II.    Whether there was sufficient evidence to convict Petitioner

Petitioner contends that his due process rights were violated because there was insufficient evidence to convict him of armed robbery.  Petitioner does not claim that there was insufficient evidence to establish that an armed robbery occurred.  Instead, Petitioner claims there was insufficient evidence to show that he was the perpetrator of

11

the robbery.

"[This] court may not reverse the jury's verdict if there is substantial record evidence to support it."  *United States v. Chandler*, 752 F.2d 1148, 1151 (6th Cir. 1985). Sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).  This inquiry "is limited to 'record evidence.'"  *Herrera v. Collins*, 506 U.S. 390, 402, 113 S. Ct. 853, 861 (1993)(citing *Jackson*, 443 U.S. at 318, 99 S. Ct. at 2788)). In reviewing a sufficiency of the evidence claim, a federal court does not make its own subjective determination of guilt or innocence; it is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.  *Herrera*, 506 U.S. at 401-02, 113 S. Ct. at 860-61; *McKenzie*, 326 F.3d at 727.

Based only on the testimony of the victim of the robbery, Kendra, the Court finds sufficient evidence to support the jury's verdict.  Kendra observed the perpetrator two times before he was held up at gunpoint.  In total, Kendra had the opportunity to observe the perpetrator for about three and a half to four and a half minutes and he provided the police with a detailed description of the individual.  Kendra testified that the inside of the station was "very well lit" and that he focused on the perpetrator's face because "[he]

12

knew [he] would have to identify him later." (Trial Tr. at 91). Approximately two months later, Kendra positively identified Petitioner as the perpetrator in a line-up.

Except for stating that the perpetrator did not have a mustache, Boone gave the police a description of the perpetrator similar to that provided by Kendra. While Boone was not able to identify Petitioner as the perpetrator at trial, he testified that Petitioner and the perpetrator looked similar.

In conducting habeas review, this Court may not assess Kendra's or Boone's credibility or reliability; those determinations lie solely in the jury's province. *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997)(citing *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985)). If the jurors found Kendra credible– and it appears they did– the prosecution presented evidence establishing that Petitioner was the perpetrator of the armed robbery. Focusing only on the record evidence, and viewing that evidence in a light most favorable to the prosecution, the Court therefore finds no merit to Petitioner's claim that there was insufficient evidence to establish his identity as the perpetrator.

### III.    Whether Petitioner's due process rights were violated by the introduction of pretrial and in-court identifications

Due process "'prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification.'" *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001)(quoting *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000)). "[A] conviction based on identification testimony must be overturned 'whenever the pretrial identification

13

procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"  *Id*.  The Sixth Circuit follows a two-step analysis in determining whether an identification is admissible.  *Id*. (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994)).

At the first step, a court must determine whether the identification procedure was suggestive.  *Id*.  If the court finds that the procedure was suggestive, it must determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible.  *Id*.  The five factors to be weighed in determining reliability are as follows:

> 1) the opportunity of the witness to view the perpetrator during the crime; 2) the witness's degree of attention to the perpetrator; 3) the accuracy of the witness's prior descriptions of the perpetrator; 4) the level of certainty demonstrated by the witness when identifying the suspect; and 5) the length of time between the crime and the identification.

*Id*. (citing *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375 (1972)).  "'Against these factors is to be weighed the corrupting effect of the suggestive identification itself.'"  *Id*. (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243 (1977)).

Petitioner challenges the photo arrays Detectives Albright and Griffith presented to Kendra and Boone after the robbery.  There is no evidence, however, that Petitioner's photograph was included in these arrays.  Petitioner's argument that the use of photographic arrays is impermissible when a line-up is available is not persuasive, as Kendra and Boone were presented with the photo arrays a few days after the robbery–

14

well before Petitioner ever was suspected and/or arrested.

   With respect to the line-up conducted two months after the robbery, Petitioner was not in the first group of five individuals and Kendra did not identify anyone in that group. Petitioner was in the second group of five individuals and Kendra did identify him at that time as the perpetrator of the robbery. Petitioner, however, has not demonstrated that this line-up was impermissibly suggestive– or even presented any circumstances that would render the identification procedure suggestive to even the slightest degree.[2]

   Petitioner argues that Kendra was "repeated[ly] improper[ly] expose[d]" to Petitioner and that this exposure rendered the identification procedures suggestive. However the exposure to which Petitioner refers occurred after Kendra positively identified Petitioner in the line-up. Petitioner further argues that Kendra's identifications of Petitioner at the line-up and subsequently at trial should have been suppressed because Petitioner was denied the right to counsel at the line-up. Contrary to Petitioner's claim, however, "the right to counsel . . . attaches only to corporeal identifications 'at or after the initiation of adversary judicial criminal proceedings– whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Moore v. Illinois*, 434 U.S. 220, 226-27, 231, 98 S. Ct. 458, 463-64 (1977)(quoting *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct 1879 (1972)); *see also United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926

---

[2]Petitioner argues that Respondent has failed to carry its burden of proving that the identifications should have been admitted. *See* Pet. at 35. It is Petitioner's burden, however, to prove that the identification procedures were suggestive. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

15

(1967).  Not only had criminal proceedings not been initiated against Petitioner with

respect to the Zephyr armed robbery at the time of Kendra's initial identification, but

Petitioner in fact was not even in custody or under arrest for the Zephyr armed robbery

when the line-up occurred.  Finally, Petitioner is not entitled to habeas relief based on any

violation of the pretrial identification rules outlined in *People v. Anderson*, 389 Mich.

155, 205 N.W.2d 461 (1973).  As the Michigan courts have observed, the rules in

*Anderson* represent the conclusion of the Michigan Supreme Court with respect to state

"rules of evidence applicable to judicial proceedings in Michigan Courts," and are

"independent of any Federal Constitutional mandate."  *People v. Winters*, 225 Mich. App.

718, 721-725, 571 N.W.2d 764, 766-68 (1998)(quoting *People v. Jackson*, 391 Mich.

323, 338, 217 N.W.2d 22 (1974)).  As the *Winters* court acknowledged, if *Anderson* were

based on federal constitutional law, it would no longer be controlling based on the

Supreme Court's decision in *Moore*.  *Id*. at 724; 571 N.W.2d at 768.

The Court does not consider the totality of circumstances unless it first finds that

the identification procedure was suggestive.  *Crozier*, 259 F.3d at 510.  As Petitioner has

not met his burden of proving that the identification procedures with respect to Kendra

were suggestive, the Court finds no merit to his claim that those procedures violated his

due process rights.

With respect to Boone, Boone did not identify Petitioner in any pretrial procedure

and therefore there was no pretrial identification evidence introduced by the prosecution

with respect to this witness.  While Boone was asked to make an in-court identification,

16

he was not able to say for sure whether Petitioner was the perpetrator.  Again, Petitioner

fails to indicate why this equivocal identification was suggestive.  In any event, the Court

believes Boone's inability to positively identify Petitioner as the perpetrator most likely

aided Petitioner's defense.[3]  The prosecutor in fact conceded to the jurors that Boone's

tentative identification alone would be insufficient to convict Petitioner.  (Trial Tr. at

296).

**IV.**     **Whether Petitioner's due process rights were violated due to the trial court's jury instruction with respect to identification**

Petitioner argues that the trial court erred in failing to read sections 5 and 6 of

Michigan Criminal Jury Instruction 7:7:01.  This instruction relates to identification.

Petitioner raised this claim on direct appeal, although in one of his supplemental briefs.

The Michigan Court of Appeals held that it was precluded from reviewing Petitioner's

claim on the merits because it was raised in a supplemental brief contrary to Michigan

Court Rule 7.212(F).  This rule prohibits supplemental briefs unless prior leave is

obtained from the court.  The court further held that it was precluded from considering

this claim because Petitioner did not request these instructions or specifically object to the

trial court's failure to give the same.[4]  *See People v. Frederick Lee Wright*, Case No.

_____

[3]Petitioner's counsel in fact cross-examined Boone with respect to his inability to
positively identify Petitioner as the perpetrator at the preliminary exam and at the trial and his
identification of someone else in the photo array as the possible perpetrator.  (Trial Tr. at 128-29
& 134-35).

[4]Petitioner claims that he in fact specifically objected to the trial court's
instruction; however the objection to which Petitioner is referring was made after the jury
began deliberating and in response to the trial court's answer to a jury note. (Trial Tr. at

101879 at 3 (Mich. Ct. App. October 9, 1989).

In light of the Michigan Court of Appeals' holding, this Court is barred from reviewing Petitioner's claim pursuant to the doctrine of procedural default. That doctrine provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). Petitioner cannot establish actual prejudice resulting from the trial court's failure to read sections 5 and 6 of the identification instruction; nor can Petitioner demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. This is because the evidence did not support a reading of section 5 and because the trial court's other instructions substantially informed the jury of the statements contained in section 6.

Section 5 of Instruction 7:7:01 reads: "[You may also consider any occasions on which the witness failed to identify defendant, or made an identification or description that conflicted with his identification of defendant at trial.]" *See People v. Storch*, 176 Mich. App. 414, 417 n.1, 440 N.W.2d 14, 16 n.1 (1989)(quoting Mich. CJI 7:7:01(5)). There is no indication in the record that Kendra ever failed to identify Petitioner or that he

―――――――――――――

285-86).

18

ever made an identification or provided a description of the perpetrator that conflicted

with his identification at trial.  While Boone failed to identify Petitioner prior to trial and

provided a slightly different description of the perpetrator to the police than he provided

at trial, he never in fact identified Petitioner at trial.  Thus there was no reason for the trial

court to read section 5.

> Section 6 of Instruction 7:7:01 reads:

>> [You should examine the witness's identification testimony
>> carefully.  You may consider whether the testimony is
>> supported in whole or in part by other evidence or
>> circumstances, because if it is so supported it may be more
>> dependable.  If the identification testimony is not supported
>> by other evidence or circumstances, it still may be used for
>> conviction, as long as you believe the testimony and you find
>> that it proves beyond a reasonable doubt defendant's identity
>> as the person who committed the crime.]

*Storch*, 176 Mich. App. at 417 n.1, 440 N.W.2d at 16 n.1 (quoting Mich. CJI 7:7:01(6)).

While the trial court did not read this specific instruction, this Court finds that the trial

court's other instructions sufficiently instructed the jury with respect to its duty to

evaluate all of the evidence to determine whether it found the identification testimony

credible.  For example, the court instructed the jury:

>> It's your duty as jurors to determine the facts.  You are the
>> sole and exclusive judges of the facts and you alone determine
>> the weight, the effect and the value of the evidence, as well as
>> the believability of the witnesses.  You must consider and
>> weigh the testimony of all witnesses and the evidence.  You
>> alone are to determine whether to believe any witness or
>> evidence and the extent to which any witness or evidence
>> should be believed ...

(Trial Tr. at 265).  The court further instructed the jury, in part:

> You are the ones who determine in this case basically the
> identification or the alibi.  The testimony on the– as to one-
> on-one, one-on-one is sufficient.  Whatever you determine is
> sufficient.  You determine the facts.  You determine what
> happened.  You determine whether Mr. Wright was there or
> not and whether Mr. Kendra identified him appropriately.
> You determine that and there is no prohibition.  There is no
> requirement that there be more than one witness.  There are
> no numbers that are around.  If one you determine to be
> sufficient, one is sufficient.  If you don't accept the testimony
> of one, then it's insufficient, if you don't accept the testimony
> of that person.  There is no number required.

(Trial Tr. at 283-84).  Based on these instructions, the Court in any event cannot find that

the trial court's failure to read section 6 "so infected the entire trial that the resulting

conviction violates due process.'"  *Estelle*, 502 U.S. at 72, 112 S. Ct. at 482 (quoting

*Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 400-01 (1973)).[5]

------

[5]The Court additionally notes that the Commentary to instruction 7:7:01 provides
that the instruction only should be given under certain circumstances and that, absent
those circumstances, reading the instruction would serve only to confuse the jury and
therefore should not be given.  *People v. Dyson*, 106 Mich. App. 90, 102, 307 N.W.2d
739, 744 (1981)(citing CJI 7:7:01, Commentary).  One example provided in the
Commentary as to when it would be inappropriate to read the instruction is "when the
identifying witness had a good opportunity for positive identification, he is positive in his
identification and his identification is not weakened by prior inconsistent identification or
by prior failure to identify, but remains, even after cross-examination, positive and
unqualified." *See id*. at n.2, 307 N.W.2d at 744 n.2.  In light of the record evidence,
particularly the consistency of Kendra's descriptions of the perpetrator and of his positive
identifications of Petitioner as the perpetrator, the Court cannot conclude that the trial
court's decision not to instruct the jury on section 6 was in error, much less that it "so
infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at
72, 112 S. Ct. at 482 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct 396, 400-01
(1973)).

20

**V.      Whether the prosecutor bolstered and vouched for the credibility of a witness and thus violated Petitioner's due process rights**

Petitioner claims the prosecutor bolstered and vouched for the credibility of its main witnesses in the following statements.  First, the prosecutor's statement that "we can't hold them [the first police to arrive at the scene] to the same standards as one would hold a detective as to the investigative steps taken to preserve evidence." *See* Pet. at 40. Second, the following statement during closing argument:

> So we're starting to get a picture of the defendant.  Is he the kind of guy who is trying to lead you into exactly what happened?  Is he giving you the straightforward information? Is he trying to be honest and open with you?  Because that's what it comes down to.  It comes down to that compared against Ron Kendra– and now we're into the People's case–[.] Was he trying to pull stunts on you on the stand?  I don't think so.  Let's look at him.  I believe that he showed that he was honest and straightforward, obviously frightened by the defendant.

*Id*.  The Court concludes that these statements do not entitle Petitioner to habeas relief.

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of [the prosecutor] behind that witness.'" *United States v. Trujillo*, 376 F.3d 593, 607-08 (6th Cir. 2004)(quoting *United States v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001)).  "Bolstering occurs when the prosecutor implies that the witnesses's testimony is corroborated by evidence known to the government but not known to the jury.'" *Id*.  This Court agrees with the Michigan Court of Appeals that the prosecutor's first statement does not constitute improper vouching or bolstering.  *See*

21

*People v. Frederick Lee Wright*, No. 101879 at 1 (Mich. Ct. App. October 9, 1989).

While the prosecutor's statement in closing argument may have bordered on improper

vouching, the Court does not find that the prosecutor's conduct "so infected the trial with

unfairness as to make the resulting conviction a denial of due process."  *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974)(providing that habeas

corpus relief only becomes available when the prosecutor's misconduct is so egregious as

to deny the petitioner a fundamentally fair trial); *United States v. Beverly*, 369 F.3d 516,

543 (6th Cir. 2004).

### VI.   Whether Petitioner's due process rights were violated when the trial court failed to articulate or specify on the record whether the sentence imposed applied to one or both of his convictions

Petitioner claims his due process rights were violated because he was convicted of

armed robbery and being a third felony offender, but the trial court imposed a single

sentence of 30-60 years incarceration.  Petitioner contends that the trial court failed to

articulate whether the sentence imposed applied to either or both of his convictions.

This claim is not cognizable on habeas review.  Petitioner has not alleged or shown

that the trial court's sentence violated the Constitution, laws, or treaties of the United

States.  Contrary to Petitioner's argument, the trial court's sentence does not leave any

uncertainty as to the length of the sentence and as to whether it was imposed based upon

constitutionally valid convictions.  Pursuant to Michigan law, Petitioner was not

sentenced separately for his conviction as a third felony offender; rather, his status as a

third felony offender resulted in an enhanced sentence for his armed robbery conviction.

22

*See* MICH. COMP. LAWS ANN. 769.11.

**VII.    Whether the trial court's instructions were coercive in that they foreclosed a "no verdict" outcome**

Petitioner contends that a portion of the trial judge's jury instructions encroached on the impartiality of the jury and foreclosed the possibility of a deadlocked jury. In short, Petitioner claims that the instructions led the jury to believe that it had to reach either a verdict of "guilty" or "not guilty" and that a non-unanimous verdict was not an option. Petitioner also claims that he is entitled to habeas relief because the trial court failed to include "subsection (v)(c)" of ABA Standard Jury Instruction 5.4 in its instructions.[6] This Court finds that Petitioner's claims lack merit.[7]

Contrary to Petitioner's assertion, the trial court did not instruct the jury that it had

---

[6]Petitioner complains that the trial court failed to instruct the jury as to subsection (v)(c) of ABA Standard Jury Instruction 5.4. There in fact is no subsection (v)(c), but rather only a subsection (c). Moreover, that section instructs the court on how to handle a jury unable to agree on a verdict when it appears that there is no reasonable probability of an agreement; it does not provide an instruction that should be read to the jury initially, prior to its deliberations.

Instruction 5.4 is broken down into three subsections: (a) through (c). Subsection (a) provides five items of information labeled (i) through (v) which the court may convey to the jury prior to its retiring for deliberation. Subsection (b) instructs the court that, "[i]f it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a)." Subsection (b) further instructs that the court shall not require or threaten the jury to continue deliberating for an unreasonable length of time or for unreasonable intervals. Subsection (c) instructs that courts may discharge a jury unable to agree on a verdict if it appears that there is no reasonable probability of an agreement. Subsection (c), therefore, applies only when the jury is deadlocked.

[7]Petitioner raised this claim for the first time in his first motion for relief from judgment. The trial court, finding that the issue could have been raised on direct review, concluded that Petitioner was not entitled to relief. Respondent, however, does not argue that the claim is procedurally defaulted.

to agree on a verdict.  In fact, the court specifically instructed the jurors: "none of you should surrender your honest conviction as to the weight and effect of the evidence or lack of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict."  *See* Pet. at 47 (quoting Trial Tr. at 275-55).  Further the Court cannot construe the trial court's statement that "by reasoning the matter out, *it's often possible* for all jurors to agree" as informing the jurors that they *had* to agree.  *Id.* (emphasis added).  Finally, when read in its context, the court's statement that "[o]nly one of the possible verdicts may be returned by you" merely informed the jury that, when it completed the verdict form, it should mark either the "guilty" or "not guilty" box, but not both.  (Trial Tr. at 277).

### VIII.  Whether Petitioner's trial and/or appellate counsel were ineffective

Petitioner contends that his trial and appellate counsel were ineffective in that they failed to challenge the errors that Petitioner now raises in his habeas petition.  As set forth above, courts apply a two-part test to evaluate an ineffective assistance of counsel claim.  First, the petitioner must show that his counsel's performance was deficient.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  Second, the petitioner must show that counsel's errors prejudiced his defense.  *Id.*  Because the Court has found no merit to Petitioner's habeas claims, the Court also must find that Petitioner was not prejudiced as a result of any error by his trial and/or appellate counsel.

### IX.   Whether Petitioner is entitled to relief based on newly discovered evidence

Petitioner seeks habeas relief contending that he is actually innocent of armed robbery as shown by "newly discovered evidence." This evidence consists of affidavits of individuals who admit that they, and not Petitioner, committed the offense. The Court finds that Petitioner's argument, although persuasive, is not cognizable on habeas review.

As the Supreme Court stated in *Herrera v. Collins*, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993). As the Supreme Court explained:

> . . . in state criminal proceedings the trial is the paramount event for determining the guilt or innocence of the defendant. Federal habeas review of state convictions has traditionally been limited to claims of constitutional violations occurring in the course of the underlying state criminal proceedings. Our federal habeas cases have treated claims of "actual innocence," not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits, even though his habeas petition would otherwise be regarded as successive or abusive.

*Id*. at 416, 113 S. Ct. at 869. In short, habeas courts may consider claims of "actual innocence" as "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits," but not as a constitutional claim itself. *Id*. at 404, 113 S. Ct. at 862.

As the *Herrera* Court reasoned, "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the

25

Constitution– not to correct errors of fact." *Id*. at 400, 113 S. Ct. at 860 (citations

omitted). "Few rulings would be more disruptive of our federal system than to provide

for federal habeas review of freestanding claims of actual innocence." *Id*. at 401, 113 S.

Ct. at 861. In other words, federal habeas courts are not the forum to relitigate state trials.

*Id*.

   In dicta, the *Herrera* Court stated that there may be a case where an independent

actual innocence claim may be considered on habeas review:

> We may assume, for the sake of argument in deciding this
> case, that in a capital case a truly persuasive demonstration of
> "actual innocence" made after trial would render the
> execution of a defendant unconstitutional, and warrant federal
> habeas relief if there were no state avenue open to process
> such a claim.

*Id*. at 417, 113 S. Ct. at 869. The Court noted, however, that "the threshold showing for

such an assumed right would necessarily be extraordinary high." *Id*. In the Court's

analysis, the evidence offered by the petitioner in *Herrera* to establish his actual

innocence fell far short of that threshhold. *Id*.

   While this Court believes that Petitioner comes far closer to reaching this threshold

than the petitioner in *Herrera*, the Supreme Court's dicta strongly suggests that a

freestanding actual innocence claim may only be available (if at all) in capital cases.

Moreover, Petitioner has not pointed to one case since *Herrera* where federal habeas

courts have considered a freestanding actual innocence claim. Additionally, unlike

*Herrera*, there appears to be a state avenue open to Petitioner to process his actual

26

innocence claim. *Id.* at 417, 113 S. Ct. at 869. In fact, in ruling on Petitioner's second motion for relief from judgment, Judge Hicks specifically indicated that he would be willing to revisit Petitioner's actual innocence claim if he presented sufficient evidence from Boyle.[8] *See* Pet. Ex. U at 5.

As the Court concludes that Petitioner has not established an independent constitutional violation occurring in his criminal trial, the Court finds that it is precluded from considering his actual innocence claim pursuant to *Herrera.* Because Petitioner seeks permission to conduct discovery with respect to this specific claim in his motion for leave to permit discovery, the Court also denies this motion.

**Conclusion**

For the reasons set forth above, the Court holds that Petitioner has failed to show that the state court's adjudication of his claims "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price*, *supra*.

Accordingly,

**IT IS ORDERED**, that Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED**, that Petitioner's motion for leave to permit discovery is **DENIED**.

---

[8]Petitioner did not obtain Boyles' affidavit until after Judge Hicks' denied his motion. *See* Pet. Ex. Q.

27

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Frederick Lee Wright
#131437
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036

William C. Campbell, Assistant Attorney General

28